UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

DEANNA RASNICK,
DEVONNA BARRY and )
AMADO MARTINEZ )
Plaintiffs, )
)
v. )
)
CITY OF DETROIT POLICE )
OFFICER WILLIAM MORRISON, )
CITY OF DETROIT POLICE )
OFFICER SAMUEL GALLOWAY, )
CITY OF DETROIT POLICE )
SGT. MARCUS WAYS )
SGT. SAMUEL MACKEY )
SGT. DETRICK MOTT )
CITY OF DETROIT POLICE )
OFFICER JOHN DOE #1, )
CITY OF DETROIT POLICE )
OFFICER JOHN DOE #2, )
CITY OF DETROIT POLICE )
OFFICER JOHN DOE #3, )
CITY OF DETROIT POLICE )
OFFICER JOHN DOE #4, )
CITY OF DETROIT POLICE )
OFFICER JOHN DOE #5, )
CITY OF DETROIT POLICE )
OFFICER JOHN DOE #6, )
CITY OF DETROIT POLICE )
OFFICER JOHN DOE #7, )
Defendants. )
_____/

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

Pursuant to Fed. R. Civ. P. 15(a)(2) and Defendants' counsel's consent to this filing, Plaintiffs Deanna Rasnick ("Rasnick"), Devonna Barry and Amado Martinez ("Martinez"), by and through their attorneys, Olson PLLC, state the following for their First Amended Complaint:

1.     This is a civil action arising under 42 U.S.C. § 1983 and common law avenues of recovery for deprivations of Plaintiff's rights.

2.     Plaintiffs sue Detroit police officers William Morrison ("Morrison"), Samuel Galloway ("Galloway"), John Doe #1-7 (collectively "John Doe Defendants") and Detroit Police Sgts. Marcus Ways ("Ways"), Samuel Mackey ("Mackey") and Detrick Mott ( collectively the "Individual Defendants") in their individual capacity.

## JURISDICTION

3.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

## VENUE

4.      Venue is proper under 28 U.S.C. § 1391(b).

5.      At all times relevant herein, Plaintiffs each resided in and were a citizens of the City of Detroit, County of Wayne, and state of Michigan.

6.      The incident giving rise to this case occurred in Wayne, Michigan.

7.      The Individual Defendants acted under color of State law and are "persons" for purposes of a 42 U.S.C. § 1983 action.

8.      Defendant City is a political subdivision of the State of Michigan acting under color of State law, and is a person for purposes of a 42 U.S.C. § 1983 action.

## COLOR OF STATE LAW

9.      At all times relevant herein, Defendants acted under color of state law including statutes, ordinances, regulations, policies, customs and usages of the State of Michigan.

## FACTUAL BACKGROUND

10.    On or about August 8, 2017, Plaintiff Rasnick, owned a dog named Tori ("Tori").

11.    On or about August 8, 2017, Plaintiff Rasnick resided 3640 Clippert Street, Detroit, Michigan 48210 ("Rasnick Residence") with her son Antonio Torres ("Antonio"), who was seven-years old at that time, her dog Tori, and her brother Dustin Rasnick ("Dustin").

12.    On August 8, 2017, Plaintiff Martinez resided at 3647 Clippert Street, Detroit, Michigan 48210 with his girlfriend Plaintiff Devonna Elizabeth Barry ("Devonna"), a former City of Detroit police officer.

13.    On August 8, 2017, the Individual Defendants were operating as part of the City of Detroit Major Violators Unit, except for Defendants Ways, Mackey and Mott, who were working Homicide at the time.

14.    On August 8, 2017, on information and belief, the Individual Defendants obtained a warrant to search for 3647 Clippert Street for firearms capable of firing .40 caliber ammunition in connection with a homicide investigation of the death of Michael Mancini a/k/a Jesus Moran ("Moran").

15.    According to an August 8, 2017 Affidavit sworn by Defendant Marcus Ways ("Ways Affidavit"), the police were investigating the homicide

of Jesus Moran who Ways alleged was shot to death in the early morning hours of July 22, 2017 in the City of Detroit.

16.     The Ways Affidavit states that on July 31, 2017, Ways spoke with a confidential Michigan State Police informant, who stated to Ways that one Nikko Kempf ("Kempf") bragged to the informant that Kempf got into a shootout with Moran.

17.     The Ways Affidavit further states that the informant stated that Kempf told the informant that Kempf used his .40 caliber handgun to commit the shooting.

18.     The Ways Affidavit further states that the informant stated that Kempf's mother still had the gun that Kempf used to kill Moran and was actively trying to sell that gun.

19.     The Ways Affidavit further states that the Kempf was arrested by Flat Rock police on July 28, 2017.

20.     The Ways Affidavit states that a search of Kempf's residence yielded two extended .40 caliber magazines but no firearm.

21.     The Ways Affidavit states that Ways listened to recordings of Kempf's phone calls from the Wayne County Jail to a person that Kempf referred to as "Squeak" in which Squeak stated that he still had the "40 weight" and was looking for a buyer.

22.    The Ways Affidavit states that Squeak asked Kempf to add Squeak to Kempf's visitor list.

23.    The Ways Affidavit states that Squeak provided Kempf his address of 3647 Clippert Street.

24.    The Ways Affidavit states that the Wayne County Jail records show a specific telephone for Squeak's call with Kempf.

25.    The Ways Affidavit states that a recording of a call between Kempf and his mother reflected that Kempf asked his mother if she had heard from Squeak and that his mother stated that Squeak's new number is the same number showing on the Wayne County Jail records of the call between Kempf and Squeak.

26.    The Ways Affidavit states that Defendant Ways conducted a LEIN search of 3647 Clippert Street and "came across Dustin Rasnick w/m 8-31-94."

27.    As shown further below, Dustin Rasnick is not Squeak and never was Squeak.

28.    The Ways Affidavit states that a search warrant of 3647 Clippert Street was executed that gave police authority to search for any firearms capable of firing .40 caliber rounds.

29.     The Ways Affidavit makes no mention of a raid on 3640 Clippert Street.

30.     On information and belief, Detroit Homicide Investigators believed that Moran's murderer used a .40 caliber hand gun to shoot Moran to death.

### THE RAID ON 3640 CLIPPERT STREET

31.     However, notwithstanding the fact that the Individual Defendants were looking for weapons capable of firing .40 caliber ammunition at 3647 Clippert Street, the Individual Defendants first raided Plaintiff Deanna Rasnick's residence at 3640 Clippert Street, which is located across the street from Plaintiffs' Devonna Barry and Amado Martinez' 3647 Clippert Street residence.

32.     Plaintiff Devonna Barry and Plaintiff Deanna Rasnick are sisters.

33.     In any event, on August 8, 2017, the Individual Defendants raided Plaintiff Deanna Rasnick's residence first – before the Individual Defendants raided Plaintiffs' Barry and Martinez's home.

34.     On information and belief, police did not have probable cause to raid Plaintiff Rasnick's home.  In particular, the only facts that tied Dustin Rasnick to 3640 Clippert Street were (i) that a confidential informant dropped

Rasnick off at that address at some unnamed time and (ii) tax records reflected that Deanna Rasnick owns the home at 3640 Clippert Street.

35.    Nevertheless, the Individual Defendants broke in Plaintiff Rasnick's front door without knocking or identifying themselves as police officers.

36.    On information and belief, Defendant Galloway or another of the Individual Defendants immediately shot Plaintiff Rasnick's dog, Tori, who had been sleeping on the floor in front of Plaintiff's Rasnick's bedroom door.

37.    At the time the Individual Defendants broke down Plaintiff Rasnick's front door, Plaintiff Rasnick was in her bedroom on the phone with her sister Plaintiff Barry.

38.    Plaintiff Rasnick's bedroom door is on the left side of the living room as one enters that home.

39.    Plaintiff Rasnick's dog Tori was sleeping in Rasnick's bedroom doorway when Galloway or another one of the Individual Defendants shot Tori.

40.    Plaintiff Rasnick opened her bedroom door and Tori was at her feet, sleeping.

41.    Plaintiff Rasnick heard gunfire.

42.     Tori did not make a single move towards her shooter or even bark before she was shot by Defendant Galloway or another of the Individual Defendants.

43.     Plaintiff Rasnick looked down and saw her dog Tory with bullet hole in her side, behind her shoulder.

44.     Police officers then snatched Plaintiff Rasnick's phone from her hands.

45.     Police officers then forced Plaintiff Rasnick and her son, Antonio Torres who was seven years old at the time, and Plaintiff Rasnick's two -year old nephew (Emilio Rasnick) to sit on the couch in full view of Tori, who was bleeding out onto the floor.

46.     Plaintiff Rasnick and her daughter Olivia (aged 9) both asked the Individual Defendants to allow them to take Tori to the veterinarian for treatment for the gunshot wound but the Individual Defendants refused.

47.     Some of the Individual Defendants laughed and joked while Tori died.

48.     Plaintiff Rasnick asked the Individual Defendants to cover up her dog dying in front of her young child and nephew, which the Individual Defendants refused to do.

49.     One of the Individual Defendants, who on information and belief was William Morrison, occasionally kicked Tori to see if she was dead.

50.     Tori died in front of Plaintiff, her seven year old son, her nine year old daughter and her two year old nephew.

51.     One of the Individual Defendants, who on information and belief was Defendant Morrison, then grabbed Tori by the legs and threw her into a plastic tote.

52.     On information and belief, the Individual Defendants transported Tori to Detroit Animal Control.

53.     The Individual Defendants search of Plaintiff Rasnick's home was unreasonable *per se* because it was without probable cause.

54.     The Individual Defendants' seizure of Plaintiff Rasnick's dog was objectively unreasonable because under the circumstances described above, Tori did not present an imminent threat of harm to anyone prior to being shot under color of state law.

55.     On information and belief, the Individual Defendants had no training with respect to dog encounters.

56.     Such training is available, for free, through the United States Department of Justice Community Oriented Policing Services.

57.     The Individual Defendants did not find any weapons capable of firing .40 caliber weapons at 3640 Clippert Street. Indeed, the only thing the search of 3640 produced was two shell casings from shooting Rasnick's dog Tori.

58.     Plaintiff sought information regarding the incident giving rise to this case, including the identity of the Individual Defendants, through a Freedom of Information Act ("FOIA") request.

59.     However, the City of Detroit effectively rejected the request when it asserted that it could not produce the requested information due to the Covid-19 global pandemic.

60.     Accordingly, Plaintiffs initiated this matter against "John Doe" Defendants.

## THE RAID ON 3647 CLIPPERT STREET

61.     After the raid on 3640 Clippert Street, on August 8, 2017 the Individual Defendants next raided Plaintiff Martinez and Barry's home at 3647 Clippert Street.

62.     The Individual Defendants did not knock or identify themselves prior to breaking open Plaintiff Martinez and Barry's door.

63.     The Individual Defendants applied excessive force to Plaintiff Martinez when they slammed him into the floor once before they hand cuffed him and once after they handcuffed him.

64.     Defendant Mott applied excessive force to Plaintiff during while interrogating Plaintiff Martinez when Mott struck Martinez in the chest with his hand.

65.     The Individual Defendants searched Plaintiff Martinez and Plaintiff Barry's home.

66.     The Individual Defendants unlawfully seized $2,000 in cash.

67.     The Individual Defendants unlawfully seized 1 glass mason jar containing marijuana for which Martinez and Barry each had medical marijuana cards.

68.     The Individual Defendants unlawfully seized Plaintiff Barry's Detroit Police Badge #631.

69.     The Badge that was seized was a novelty badge and not a department issued badge.

70.     The Individual Defendants unlawfully seized Plaintiff Barry's licensed and registered .380 caliber handgun.

71.     The Individual Defendants unlawfully seized Plaintiff Barry's sex toys.

72.    The Individual Defendants unlawfully destroyed Plaintiff Martinez and Plaintiff Barry's house.

73.    Plaintiff Barry's licensed and registered .380 caliber handgun was not capable of firing .40 caliber ammunition.

74.    The Individual Defendants unlawfully seized Plaintiff Martinez and Plaintiff Barry's hard drive that contained video footage of the Individual Defendants raiding their home.

75.    The Individual Defendants unlawfully seized Plaintiff Martinez and Plaintiff Barry's Fire Stick streaming device.

76.    The Individual Defendants unlawfully seized Plaintiff Martinez's driver's license.

77.    The Individual Defendants wrongfully seized Plaintiff Barry and Plaintiff Martinez property when they followed Defendant Mott's order to "tear up" the house.

78.    The Individual Defendants wrongfully arrested Plaintiff Martinez for felon in possession of a firearm that was lawfully owned and possessed by his girlfriend, Plaintiff Barry, a former Detroit police officer.

79.    There was no probable cause to arrest or incarcerate Plaintiff Martinez.

80.    Plaintiff Martinez was then unlawfully incarcerated and prosecuted for possession of firearm by a felon, felony firearm and possession of marijuana.

81.    Defendant Mott subsequently interrogated Dustin Rasnick about the jail house telephone call recordings that were the basis of these raids and admitted to Rasnick that it was not Rasnick's voice on the recordings.

82.    Defendant Mott also admitted to Dustin Rasnick that a computer program misidentified the voice on the recordings as Dustin Rasnick's.

83.    On May 9, 2018, Judge Dalton A. Roberson conducted a bench trial after which he granted a motion for directed verdict and dismissed all charges.

84.    Plaintiffs Martinez and Barry requested the City of Detroit police return the property that the Individual Defendants illegally seized.

85.    The City of Detroit refused to return Plaintiff's property.

**COUNT I**
**VIOLATIONS OF CIVIL RIGHTS**
**42 U.S.C. § 1983 AND THE FOURTH AMENDMENT**
**AGAINST THE INDIVIDUAL DEFENDANTS**
**FOR COMPENSATORY DAMAGES, PUNITIVE DAMAGES**
**AND ATTORNEY'S FEES**

86.    Plaintiffs re-alleges all of the preceding paragraphs.

87.    "The Fourth Amendment of the United States Constitution, U.S. Const. amend. IV, protects the individual's privacy in a variety of settings. In

14

none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home--a zone that finds its roots in clear and specific constitutional terms: "***The right of the people to be secure in their ... houses ... shall not be violated***."  In terms that apply equally to seizures of property and to seizures of persons, ***the Fourth Amendment has drawn a firm line at the entrance to the house***. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York*, 445 U.S. 573, 589-90 (1980).

88.    The search Plaintiff Rasnick's home without a warrant was presumptively unreasonable. *Id*. at 586; *Georgia v. Randolph*, 547 U.S. 103, 120 (2006).

89.    The Individual Defendants detention of Plaintiff Deanna Rasnick was an unreasonable seizure of Plaintiff because, *inter alia*, (i) there was no reasonable suspicion of her and (ii) there was no warrant.

90.    The seizure of Plaintiff under these circumstances was unreasonable.  *Terry v. Ohio,* 392 U.S. 1, 16 (1968).

91.    The Fourth Amendment of the United States Constitution, U.S. Const. amend. IV, prohibits the government from unreasonably seizing a citizen's property.

92.     "The destruction of property by state officials poses as much of a threat, if not more, to people's right to be 'secure . . . in their effects' as does the physical taking of them." *Fuller v. Vines*, 36 F.3d 65, 68 (9th Cir. 1994), overruled on other grounds, *Robinson v. Solano County*, 278 F.3d 1007, 1013 (9th Cir. 2002) (citation omitted).

93.     An individual has a Fourth Amendment property right in their pets. *San Jose Charter of the Hell's Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 977-78 (9th Cir. 2005); *Brown v. Battle Creek Police Department*, 844 F.3d 556, 568 (6th Cir. 2016).

94.     That an individual has a property right in their pets was clearly established in 2013. *Brown*, 844 F.3d at 567.

95.     Pets are more than just a personal effect. *San Jose,* 402 F.3d at 975.

96.     The emotional attachment to a pet is not comparable to a possessory interest in furniture or other inanimate property. *Id*.

97.     Indeed, Plaintiff Rasnick's Fourth Amendment interests involved are substantial because the bond between an owner and their pet is strong and enduring and Plaintiff thinks of their pet "in terms of an emotional relationship, rather than a property relationship." *Altman v. City of High Point, N.C.*, 330 F.3d 194, 205 (4th Cir. 2003).

16

98.    The Individual Defendants' acts described herein were intentional, grossly negligent and amounted to reckless or callous indifference to Plaintiff's constitutional rights.

99.    The Individual Defendant's seizure of Tori was objectively unreasonable.

100.   No exigent circumstances warranted the intrusion involved in this case.

101.   No governmental interest justifies the search or seizure involved in this case.

## COMPENSATORY DAMAGES

102.   Under 42 U.S.C. § 1983 Plaintiff Rasnick is entitled to an award of compensatory damages against each Defendant in his individual capacity, which includes "damages for the emotional distress suffered by Plaintiffs . . . and any other injury that is the result of . . . the unlawful seizure of" dog. *Moreno v. Hughes*, 157 F.Supp.3d 687, 692 (E.D. Mich. 2016).

## PUNITIVE DAMAGES

103.   The Individual Defendants' actions were:

   a.    Reckless;

   b.    Showed callous indifference toward the rights of Plaintiff; and

      c.     Were taken in the face of a perceived risk that the actions would violate federal law.

104.  Plaintiff Rasnick is entitled to an award of punitive damages against the Individual Defendants in their individual capacity, in order to punish him and to deter others.

**ATTORNEY'S FEES**

105.  Under 42 U.S.C. § 1988, if Plaintiff Rasnick is the prevailing party in this litigation, then she will be entitled to receive an award of reasonable attorney's fees, non-taxable expenses and costs.

THEREFORE, Plaintiff Rasnick prays for judgment under 42 U.S.C. § 1983 and 1988 against the Individual Defendants in their individual capacity, for compensatory damages in a fair and reasonable amount, for punitive damages, for reasonable attorney's fees, for and non-taxable expenses, for costs, and Plaintiff prays for such other relief as may be just under the circumstances and consistent with the purpose of 42 U.S.C. § 1983.

**COUNT II**
**VIOLATIONS OF CIVIL RIGHTS**
**42 U.S.C. § 1983 AND THE FOURTH AMENDMENT**
**AGAINST THE INDIVIDUAL DEFENDANTS**
**FOR COMPENSATORY DAMAGES, PUNITIVE DAMAGES**
**AND ATTORNEY'S FEES**

106.  Plaintiffs re-allege all of the preceding paragraphs.

18

107. "The Fourth Amendment of the United States Constitution, U.S. Const. amend. IV, protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home--a zone that finds its roots in clear and specific constitutional terms: "***The right of the people to be secure in their ... houses ... shall not be violated***." In terms that apply equally to seizures of property and to seizures of persons, ***the Fourth Amendment has drawn a firm line at the entrance to the house***. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York*, 445 U.S. 573, 589-90 (1980).

108. The Individual Defendants' arrest of Plaintiff Amado Martinez was an unreasonable seizure because *inter alia* there was no reasonable suspicion of Martinez illegally possessing a firearm that was registered and licensed to Plaintiff Devonna Barry who was known by the Individual Defendants to be a former Detroit police officer.

109. The seizure of Plaintiff Martinez under these circumstances was unreasonable. *Terry v. Ohio,* 392 U.S. 1, 16 (1968).

110. The Fourth Amendment of the United States Constitution, U.S. Const. amend. IV, prohibits the government from unreasonably seizing a citizen's property.

111.  "The destruction of property by state officials poses as much of a threat, if not more, to people's right to be 'secure . . . in their effects' as does the physical taking of them." *Fuller v. Vines*, 36 F.3d 65, 68 (9th Cir. 1994), overruled on other grounds, *Robinson v. Solano County*, 278 F.3d 1007, 1013 (9th Cir. 2002) (citation omitted).

112.  The Individual Defendants seizure of Plaintiffs Martinez and Barry's property under the circumstances was unreasonable because (i) none of the seized property was identified on a warrant, (ii) Plaintiffs Martinez and Barry legally possessed the medical marijuana pursuant to valid medical marijuana cards and (iii) Plaintiff Barry legally possessed the .380 handgun pursuant to valid license and registration.

113.  The unreasonable seizure of Plaintiff Martinez and Barry's property violated their Fourth Amendment rights.

114.  The Individual Defendants' application of excessive force upon Plaintiff Martinez was unreasonable and violated his Fourth Amendment rights.

115.  The Individual Defendants' unreasonable destruction of Plaintiffs Martinez and Barry's property violated their Fourth Amendment rights.

116.   The Individual Defendants' acts described herein were intentional, grossly negligent and amounted to reckless or callous indifference to Plaintiff's constitutional rights.

117.   No exigent circumstances warranted the intrusion involved in this case.

118.   No governmental interest justifies the searches or seizures involved in this case.

### COMPENSATORY DAMAGES

119.   Under 42 U.S.C. § 1983 Plaintiffs Martinez and Barry are entitled to an award of compensatory damages against each Individual Defendant in their individual capacity, which includes damages for the emotional distress suffered by Plaintiffs . . . and any other injury that is the result of . . . the Constitutional violations alleged here.

### PUNITIVE DAMAGES

120.   The Individual Defendants' actions were:

    d.   Reckless;

    e.   Showed callous indifference toward the rights of Plaintiff; and

    f.   Were taken in the face of a perceived risk that the actions would violate federal law.

**121.**   Plaintiffs Martinez and Barry are entitled to an award of punitive damages against the Individual Defendants in their individual capacity, in order to punish him and to deter others.

ATTORNEY'S FEES

122.   Under 42 U.S.C. § 1988, if Plaintiffs Martinez and Barry are the prevailing party in this litigation, then she will be entitled to receive an award of reasonable attorney's fees, non-taxable expenses and costs.

THEREFORE, Plaintiffs Martinez and Rasnick prays for judgment under 42 U.S.C. § 1983 and 1988 against the Individual Defendants in their individual capacity, for compensatory damages in a fair and reasonable amount, for punitive damages, for reasonable attorney's fees, for and non-taxable expenses, for costs, and Plaintiff prays for such other relief as may be just under the circumstances and consistent with the purpose of 42 U.S.C. § 1983.

COUNT III<br>CONVERSION

75.   Plaintiffs repeat their prior allegations.

76.   "Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Thoma v. Tracy Motor Sales, Inc*., 360 Mich. 434, 438 (1960)(quoting *Nelson & Witt v. Texas Co*., 256 Mich. 65, 70)).

77.    The Individual Defendants' actions were a distinct act of dominion wrongfully exerted over Plaintiffs' property in denial of or inconsistent with their rights.

THEREFORE, Plaintiffs request relief under applicable law or in equity, including, without limitation, a judgment and an award of statutory treble damages and all reasonable costs, interest and attorney fees.   M.C.L. § 600.2919a.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

78.    Plaintiffs incorporate their prior allegations.

79.    The Individual Defendants' conduct described herein was extreme and outrageous conduct because it was beyond all possible bounds of decency and could be regarded as atrocious and utterly intolerable in a civilized community and would (and in fact has) cause an average member of the community would . . . exclaim, "Outrageous!"

80.    The Individual Defendants' actions described herein were intentional or reckless

81.    The Individual Defendants' actions caused Plaintiffs severe emotional distress so severe that no reasonable person could be expected to endure it, including without limitation, severe horror, grief and anger over the

loss of her dogs, nausea, inability to eat, loss of sleep, inability to concentrate among others. *Haverbush v. Powelson*, 217 Mich. App. 228, 234-35 (1996).

THEREFORE, Plaintiffs request a judgment for damages, exemplary damages, reasonable attorneys' fees and costs and any other relief that the Court deems just and equitable.

Respectfully submitted,

OLSON PLLC

/s/ Christopher S. Olson
Christopher S. Olson (P58780)
32121 Woodward Avenue
Suite 300
Royal Oak, Michigan 48073
(248) 672-7368
colson@olsonpllc.mygbiz.com
*Attorneys for Plaintiffs*

November 23, 2020
Detroit, Michigan

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

Respectfully submitted,

OLSON PLLC

/s/ Christopher S. Olson_____
Christopher S. Olson (P58780)
32121 Woodward Avenue
Suite 300
Royal Oak, Michigan 48073
(248) 672-7368
colson@olsonpllc.mygbiz.com
*Attorneys for Plaintiffs*

November 23, 2020
Detroit, Michigan