UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

~~DEANNA RASNICK,~~
DEVONNA BARRY, and                          Case No.: 2:20-cv-12069
AMADO MARTINEZ                              Hon. Linda V. Parker

Plaintiffs,

-vs-

WILLIAM MORRISON,
SAMUEL GALLOWAY,
SGT. MARCUS WAYS,
SGT. SAMUEL MACKEY,
SGT. DETRICK MOTT,
CITY OF DETROIT POLICE OFFICER JOHN DOE #1,
CITY OF DETROIT POLICE OFFICER JOHN DOE #2,
CITY OF DETROIT POLICE OFFICER JOHN DOE #3,
CITY OF DETROIT POLICE OFFICER JOHN DOE #4,
CITY OF DETROIT POLICE OFFICER JOHN DOE #5,
CITY OF DETROIT POLICE OFFICER JOHN DOE #6,
CITY OF DETROIT POLICE OFFICER JOHN DOE #7,
                        Defendants.
_____/

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Plaintiffs state the following for their Brief In Opposition To Motion For Motion

For Summary Judgment:

## ISSUES PRESENTED

Whether genuine issues of material fact preclude summary judgment?

Plaintiffs say: "Yes"

Defendants apparently say: "No."

## TABLE OF CONTENTS

ISSUES PRESENTED…………………………………………………………ii

INDEX OF AUTHORITIES………………………………………………………iv

INDEX OF EXHIBITS…………………………………………………...…vii

FACTS……………………………………………………………………………..1

ARGUMENT………………………………………………………………….10

**I.    THE COURT SHOULD NOT ESTOP MARTINEZ FROM CHALLENGING THE WARRANT BECAUSE HE DID NOT HAVE A FULL AND FAIR OPPORTUNITY TO CHALLENGE IT IN THE CIRCUIT COURT**

      **A.    The Court Should Reject Defendants' Estopple Argument Because There Was Not An Identity of Parties Across The Proceedings**

      **B.    The Court Should Reject Defendants' Estopple Argument Because There Was Not An Identity of Parties Across The Proceedings**

      C.    Defendants Estopple Argument Is An Implied Waiver Of Law Enforcement Privilege

      D.    Plaintiff Has Raised A Genuine Issue of Material Fact About Whether Ways Violated Plaintiffs' Constitutional Rights In Obtaining The Warrant

**II.    THE COURT SHOULD DENY DEFENDANTS' MOTION BECAUSE THERE IS AT LEAST A GENUINE ISSUE OF MATERIAL FACT ABOUT WHETHER DEFENDANTS USED EXCESSIVE FORCE AGAINST MARTINEZ**

# INDEX OF AUTHORITIES

## Cases

*Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994) .............................................. 23, 25

*Aldini v. Johnson*, 609 F.3d 858, 865 (6th Cir. 2010) .................................................. 21

*Aroma Wines & Equip., Inc. v. Columbian Dist. Servs., Inc.,* 303 Mich. App. 441, 447 (2013) ....................................................................................................... 25

*Barrera v. City of Mt. Pleasant*, 476 F. Supp. 3d 604, 612 (E.D. Mich. 2020) ......... 16

*Bass v. Robinson*, 167 F.3d 1041, 1045 (6th Cir. 1999) ....................................... 21, 22

*Bultema v. Benzie County*, 146 Fed.Appx. 28, 37 (6th Cir. 2005) ............................. 23

*Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004) ................ 23

*Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987) .............................. 11, 14

*Darrah v. City of Oak Park*, 255 F.3d 301 (6th Cir. 2001)............................. 12, 13, 14

*Dean v. F.D.I.C.*, 389 F.Supp.2d 780, 791-792 (E.D. Ky. 2005) .............................. 17

*Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1126 (7th Cir. 1997) ...... 18, 19

*Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 568-69 (1951) ............... 10

*Estes v. Titus*, 481 Mich. 573, 585 (2008) .................................................................. 11

*Floyd v. City of Detroit*, 518 F.3d 398, 409 (6th Cir. 2008) ................................. 25, 26

*Frantz v. Village of Bradford*, 245 F.3d 869, 874 (6th Cir. 2001) ............................. 11

*GAB Business Servs., Inc. v. Syndicate* 627, 809 F.2d 755, 762 (11th Cir. 1987)..... 18

*Gaddis ex rel. Gaddis v. Redford Township*, 364 F.3d 763, 772 (6th Cir. 2004) ...... 22

*Gilbert v. Ferry*, 413 F.3d 578, 580 (6th Cir. 2005) ............................................. 16, 17

*Goodwin v. City of Cleveland*, No. 1:15CV00273 (N.D. Ohio Apr. 20, 2016) ......... 18

*Gradisher v. City of Akron*, 794 F.3d 574, 587 (6th Cir. 2015) .................................. 26

*Graham v. Connor*, 490 U.S. 386, 394 (1989) .............................................. 21, 22, 24

*Grawey v. Drury*, 567 F.3d 302 (6th Cir. 2009) ........................................... 23

*Hale v. Kart*, 396 F.3d 721, 725 (6th Cir. 2005) ......................................... 20

*Hanner* v. *Mich. St. Police Motor Carrier Officer Brett*, E.D. Mich. Case No. 03-74675 (Nov. 16, 2005) ............................................................ 15

*Harris v. City of Circleville*, 583 F.3d 356, 367 (6th Cir. 2009) ............................... 24

*Heckler v. Community Health Servs.*, 467 U.S. 51, 59 (1984) .................................. 19

*Hinchman v. Moore*, 312 F.3d 198 (6th Cir. 2003) ....................................... 12, 13, 15

*In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005) .............................................. 18

*In re the Cnty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) ......................................... 18

*Kallas v. Carnival Corp.*, 2008 WL 2222152, *5 n. 1 (S.D. Fla. May 27, 2008) ...... 18

*Lewis v. Downs*, 774 F.2d 711, 714 (6th Cir. 1985) ..................................... 24

*Malley v. Briggs*, 475 U.S. 335, 345 (1986) .............................................. 20

*McDowell v. Rodgers,* 863 F.2d 1302, 1307 (6th Cir. 1988) ...................................... 24

*Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) ...................................... 20

*Ohio Bureau of Workers' Comp. v. MDL Active Duration Fund, Ltd.*, No. 2:05CV0673, 2006 WL 3311514 (S.D. Ohio Nov. 13, 2006) ................................ 17

*Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000) ...................................... 17

*Phelps v. Coy*, 286 F.3d 295, 302 (2002) .................................................. 23

*Pitney Bowes, Inc. v. Mestre*, 86 F.R.D. 444 (S.D. Fla. 1980) ................................ 18

*Smith v. Thornburg*, 136 F.3d 1070, 1077 (6th Cir. 1998) ....................................... 14

*Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007) .................................................. 19

*United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir. 1991) ................................. 18

*Urseth v. City of Dayton*, 110 F.R.D. 245, 253 (S.D. Ohio 1986) ............................ 17

*Wesley v. Campbell*, 779 F.3d 421, 428-29 (6th Cir. 2015) ...................................... 20

**Statutes**

42 U.S.C. § 1983 ............................................................................................... 11, 14

**Rules**

Fed. R. Civ. P. 8 ...................................................................................................... 16

## INDEX OF EXHIBITS

1.    Martinez Affidavit

2.    June 30, 2021 Ways Tr.

3.    December 14, 2021 Defendants' Counsel Email

4.    Barry's CPL

5.    *Hanner v. Mich. St. Police Motor Carrier Officer Brett*, E.D. Mich.

Case No. 03-74675 (Nov. 16, 2005).

6.    *Kallas v. Carnival Corp.*, 2008 WL 2222152, *5 n. 1 (S.D. Fla. May 27,

2008).

## FACTS

*The Ways Affidavit.*  On August 8, 2017, the Defendants apparently obtained multiple warrants to search Plaintiffs' residence at 3647 Clippert Street for firearms capable of firing .40 caliber ammunition in connection with a homicide investigation into the death of Michael Mancini a/k/a Jesus Moran ("Moran").  (Defendants' Exhibits B, C and I, ECF Nos. 39-3, 39-4 and 39-8; Page ID. 318, 322 and 398.)  Each Warrant purports to be supported by an August 8, 2017 Affidavit sworn by Defendant Marcus Ways ("Ways Affidavit").  *Id.*  Ways testified that (i) police were investigating the homicide of Moran, who was shot to death in the early morning hours of July 22, 2017 in the City of Detroit (ii) on July 31, 2017, Ways spoke with a confidential Michigan State Police informant, who stated to Ways that one Nikko Kempf ("Kempf") bragged to the informant that Kempf got into a shootout with Moran (*Id.* at ¶ 4; PageID.399), (iii) the informant told him that Kempf told the informant that Kempf used his .40 caliber handgun to commit the shooting [an apparent murder admission that has not lead to murder charges against Kempf] (*Id.* at ¶5), (iv) the informant told him that Kempf's mother still had the gun that Kempf used to kill Moran and was actively trying to sell that gun (*Id.* at ¶ 6) and (v) Kempf was arrested by Flat Rock police on July 28, 2017 and a search of Kempf's residence yielded two extended .40 caliber magazines but no firearm.  (*Id.* at ¶ 5.)

*The jail house calls.*  The jail house calls were the factual basis for the search warrants.  *Id.*  Ways testified that he listened to recordings of Kempf's phone calls

from the Wayne County Jail to a person that Kempf referred to as "Squeak" in which Squeak stated that he still had the "40 weight" and was looking for a buyer.  (*Id.* at ¶ 6.)  Ways claimed that Squeak asked Kempf to add Squeak to Kempf's visitor list. The Ways Affidavit states that Squeak provided Kempf his address of 3647 Clippert Street.  The Ways Affidavit states that the Wayne County Jail records show a specific telephone for Squeak's call with Kempf.  Ways testified that he listened to a recording of a call between Kempf and his mother in which Kempf asked his mother if she had heard from Squeak and that his mother stated that Squeak's new number is the same number showing on the Wayne County Jail records of the call between Kempf and Squeak.  (*Id.* at ¶ 6.)  The Ways Affidavit states that Defendant Ways conducted a LEIN search of 3647 Clippert Street and "came across Dustin Rasnick . . . .who hangs out with Nikko Kempf and goes by the name 'Squeak.'"  (*Id.* at ¶ 8.)

Apparently, four search warrants were issued based on the Ways Affidavit, including two authorizing two searches and seizures of Plaintiffs home at 3647 Clippert St. in Detroit.  (Defendants' Exhibits B and I; Page ID.318 and 397.)  As demonstrated below, Defendants asserted the "law enforcement investigatory privilege" on every question about the jail house calls and refused to produce the recordings based on the same privilege.

*Martinez's testimony.*  Plaintiff Martinez saw police across the street raiding Deanna Rasnick's home via surveillance video.  (Martinez Tr. at 11:2-6; ECF No. 39-15, PageID.465.)  Martinez next tried to take his dogs to his backyard.  (*Id.* at 11:16,

13:3; ECF No. 39-15, PageID.465-67.)  Defendants did not knock or announce their presence before tearing down Plaintiffs' door, which is how Martinez discovered the police were at his house.  (*Id*. at 11:2, 16; ECF No. 39-15, PageID.465; FAC ¶ 62, PageID.131.)  Martinez encountered a police officer on his way out to put the dogs in the back yard, who pointed a gun at his head and ordered him outside.  (*Id*. at 12:12; ECF No. 39-15, PageID.466.)  Martinez tried to step in front of his dogs so that the officers would not shoot his dogs.  (*Id*. at 13:3; ECF No. 39-15, PageID.467.)  It turns out that that concern was not unfounded because Defendant Officer Samuel Galloway shot and killed Deanna Rasnick's dog while raiding her house across the street.  (ECF No. 39-5, PageID.327.)

*Excessive force.*  In any event, a police officer used excessive force when he dragged Martinez down his driveway and violently threw Martinez facedown onto the pavement despite the fact that Martinez offered no resistance.  (Martinez Tr. at 13:10; ECF No. 39-15, PageID.467.)   Police officers next handcuffed Martinez's hands behind his back and violently yanked Martinez back up from the ground by the chain between the handcuffs up to a standing position at a time when Martinez was handcuffed and not resisting.  (*Id.* at 14:5; ECF No. 39-15, PageID.468.)  Police next placed Martinez up against a wall for four or five hours.  (*Id*. at 16:10; ECF No. 39-15, PageID.470.)   Defendant Sgt. Mott then without advising Martinez about his *Miranda* rights questioned Martinez about "where the money was at."  (*Id*. at 17:3; ECF No. 39-15, PageID.471; Exhibit 1, Martinez Aff. at ¶13.)  Plaintiff Martinez

believed that the police were engaging in an armed robbery of his home and advised Sgt. Mott that he would invoke his Fifth Amendment right to remain silent. (Exhibit 1, Martinez Aff. at ¶16). Defendant Mott "pulled me off the wall, took me into the kitchen. He was irate that I told him I would not be answering any more of his questions. ***And he struck me once in the chest . . . with his open hand, left hand, the back of it***." (*Id*. at 17:10-16; ECF No. 39-15, PageID.471.) Martinez was in handcuffs at that time and not resisting. (Exhibit 1, Martinez Aff. at ¶ 18.) Indeed, Martinez testified that he never resisted the police. (Exhibit 1, Martinez Aff. at ¶24.) After that, Martinez was placed back against the wall in the dining room where he remained for a total of about four hours. (*Id*. at 18:13; ECF No. 39-15, PageID.472; Exhibit 1, Martinez Aff. at ¶21.) Martinez testified that he was never advised of his *Miranda* rights or shown a warrant and none was left after the search. (*Id*. at 19:3; ECF No. 39-15, PageID.473; Exhibit 1, Martinez Aff. at ¶¶ 22-24.)

Defendants in conducting their raid, which obtained zero evidence relating to the Moran murder investigation, unreasonably destroyed property in Plaintiffs' home. (Exhibit 1, Martinez Aff. at ¶26.)

*Barry's testimony*. Plaintiff Barry is a former Detroit police officer in the tactical services section, which are the first responders to barricaded gunmen, terrorist attacks, etc. (Barry Tr. at 13-14, ECF No. 39-19, Page ID.628). Barry left the Detroit Police Department voluntarily in 2007 after about 8 years of service. (*Id*.) Barry also testified that Defendants "tore up everything in my home that they could . . .

4

supposedly looking for a gun that they shouldn't have been looking for in my home. They did not find it, but they still stole $2,000 from me, the stole personal belongings of mine, they disrupted my family, they broke dishes, took clothes out of every drawer and threw it all over the floor." (Barry Tr. at 25-26, ECF No. 39-19, PageID.639-640.) "When I first walked into my home, it was trashed. Everything that could be knocked over, broken or flipped had been." (*Id*. at 32:8, PageID.646.)

 *Barry's property was seized*. Barry had a medical marijuana card authorizing her to possess the marijuana that Defendants seized as evidence of a crime. (*Id*. at 35:21, PageID.649.) Defendants also seized a Samsung DVR that contained video surveillance footage of the exterior of Plaintiffs' home. (*Id*. at 36-37; PageID.650-651.) Barry also went to asset forfeiture to recover her $2,000 in cash that Defendants seized. (*Id*. at 38:19, PageID.653.) The $2,000 was never returned and had nothing to do with any crime. Defendants also seized Barry's .380 handgun and it was never returned. (*Id*. at 41, PageID.655.) Obviously, the .380 is not capable of firing .40 caliber ammunition, which is what the warrant authorized. Barry had a CPL at the time of the seizure. (*Id*. at 32:8, PageID.646; and see Exhibit 4.) Defendants also seized a novelty police badge, which was silver and reflected Plaintiff Barry's former badge number, 631. (*Id*. at 44:21, PageID.658.) The badge was not Barry's department-issued badge. Instead, it is a novelty badge . . . a toy. (*Id*. at 45:1, PageID.659.) Barry obtained the badge from a retired Detroit police Lieutenant who made it. (*Id*. at 459-17, PageID.659 and 46:2, PageID.660.) Barry also testified that

Defendants "broke the bricks to the front of my doorway trying to improperly used the tool to break the door . . . they took an air-conditioner . . . and slammed it into my hardwood floor . . . they took antique dishes that I had in the kitchen . . . smashed all of them.  (*Id*. at 50, PageID.664.)

*Martinez testified that the warrant contained knowingly false information*.  (*Id*. at 20:3; ECF No. 39-15, PageID.474.)   In particular, Martinez testified that (i) "the connection between this house and the homicide is non-existent" (*Id*. at 20:10; ECF No. 39-15, PageID.474), (ii) "I know for a fact that they" included false information in the warrant, (*Id*. at 20:12; ECF No. 39-15, PageID.474), (iii) "the identification of Squeak and Dustin Rasnick, that was purposely misleading . . ." they misidentified Dustin Rasnick as Squeak in the Affidavit requesting the search warrant.  (*Id*. at 20:17-25; ECF No. 39-15, PageID.474; *Cf*. Ways Affidavit at ¶¶ 6-8, ECF No. 39-8, Page ID 399), (iv) Dustin Rasnick never went by the name Squeak (*Id*. at 21; ECF No. 39-15, PageID.475), (v) "I believe the information was manipulated in order to get the search warrant," (*Id*. at 21:25; ECF No. 39-15, PageID.475-476) and (vi) "Dustin Rasnick has never went by the name of 'Squeaks.'  Dustin Rasnick was not on the call that was said that he was recorded on.  That was not his voice." (*Id*. at 22; ECF No. 39-15, PageID.476.). ***Importantly, Martinez testified that Defendant Mott admitted that the voice on the recordings was not Dustin.***  (*Id*. at 22:8; ECF No. 39-15, PageID.476.) F.R.E.  801(d)(1)(A).   Martinez also offered the following testimony about false information used to obtain the warrant:

A:      The first thing that I have a very hard time believing that the lien that was said to be ran for 3647 Clippert would say that Dustin currently lives here.· Also, the writer sent a picture of Dustin to the confidential informant so that he could confirm that it is Dustin, and it is the person that goes with Squeaks.· That is false.

Q.· ·   So why do you believe the lien search would show Dustin living at 3647 Clippert Street?

A.· ·   Because Dustin has not lived here prior to that date for years.

(Martinez Tr. at 25:14; ECF No. 39-15, PageID.479)

*Martinez's criminal proceedings.*  Martinez filed a motion to suppress pursuant to *Franks v. Delaware,* 493 U.S. 154 (1978) asking the circuit court to suppress all evidence obtained in the search.  (*Franks* Motion, ECF 39-17, PageID.577; Exhibit 1, Martinez Aff. at ¶27.)  In particular, the Motion alleged that the "affidavit contains false and stale information regarding jail calls that the magistrate relied on in determining whether there was probable cause for the search."  *Id*., *Franks* Motion at ¶¶ 8, 12, PageID.578-579.)

Martinez's *Franks* Brief argued that "Sergeant Ways acted with deliberate falsehood and reckless disregard of the truth when submitting the affidavit to the magistrate."  The Brief concluded that Mr. Martinez is entitled to a hearing to attack the veracity of the search warrant.  (*Franks* Br. at 4-5, ECF No. 39-17, Page ID.583-84.)  However, Martinez was not permitted to review the jail house phone records as part of his defense.  (Exhibit 1, Martinez Aff. at ¶28.)

On February 23, 2018, Wayne County Circuit Judge Vonda Evans denied the *Franks* Motion.  (Exhibit 1, Martinez Aff. at ¶29-30.)  In particular, the court ruled

7

without holding an evidentiary hearing that "the Court does not believe that the movant has demonstrated under each level that there was a deliberate falsehood, or that there was a reckless disregard for the truth.  So, the Court is gonna deny it." (February 23, 2018 *Franks* Motion Hearing Tr. at 15-16; ECF No. 39-18, Page ID.600-01.)  Thus, Martinez was denied the ability to evaluate the factual basis for the warrant (i.e., the jail house phone recordings) in any meaningful way.  (Exhibit 1, Martinez Aff. at ¶31.)

At trial, Detroit Police Officer Samuel Pionessa testified that the .380 that was recovered from Plaintiffs home was not the murder weapon that they were looking for. (May 9, 2018 Bench Trial Tr. at 45-46; ECF No. 39-16, Page ID.557-58.)  Neither did police find Dustin Rasnick at Plaintiffs' house.  *Id*.  Ultimately, Wayne County Circuit Court Judge Dalton A. Roberson found Martinez not guilty on all counts following a bench trial.  (*Id*. at 63:10, ECF No. 39-16, PageID.575.).

*In this case, Ways' refused to answer any questions about the jailhouse calls based on privilege*.  Defendant Ways asserted the "law enforcement investigatory privilege" and refused to answer questions that (i) identify the informant (Exhibit 2, Ways Tr. at 9-10), (ii) state why Kempf was not prosecuted for the murder despite Ways' testimony that the informant told Ways that Kempf admitted murdering Moran, (*Id*. at 10:6), (iii) identify telephone origination records that could be used to verify that the calls were between the same two people (*Id*. at 27:18), (iv) indicate whether the calls were even between the same two numbers or not, (*Id*. at 28:5-29:10), (v) disclose contents of his records that would identify the dates and times of the jail house

calls, (*Id*. at 29:13), (vi) identify any links between the Moran homicide and Plaintiff's home, (*Id*. at 33:21-34:12), and (vii) identify any information outside of the Affidavit that links the Moran investigation to Plaintiff's home, (*Id*. at 34:17-25).

Ways admitted that he obtained the jail house recordings from the Wayne County jail on a disc containing audio files and had them in his possession. (Exhibit 2, Ways Tr. at 23-24.) Ways testified that he listened to the jail house recordings and used them as the foundation for his Affidavit used to obtain the search warrants. (*Id*. at 24:22-25:7.) Ways could not recall the dates of the calls. (*Id*. at 25:10-11.) The jail house call recordings were the basis for the warrants. (*Id*. at 26:3.) Ways claimed that he was sure that all of the jail house calls that he listened to were between the same two individuals based on the calls alone. (*Id*. at 27:12.) Ways testified that he had records in his possession that would confirm the dates and times of the calls. (*Id*. at 29-30.) Ways testified that the only way to ascertain whether the jail house calls supporting his affidavit was stale was "If the information was stale the warrants would not get signed by the magistrate." (*Id*. at 29:19.) Ways admitted that he obtained no other information between July 31, 2017, the date he spoke with the informant and August 8, 2017, when he presented his Affidavit to the magistrate. (*Id*. at 32:8.) Defendants also refused to produce the jail house recordings based on the law enforcement investigatory privilege. (Exhibit 3, December 14, 2021 Defendants' Counsel Email.)

Now Defendants use the "law enforcement investigatory privilege" as a sword

and asks the Court to enter Summary Judgment against Plaintiffs where Defendants have refused to produce such material information based on privilege.  For the reasons below, Plaintiffs ask the Court to Deny the Motion.

## ARGUMENT

I.   **THE COURT SHOULD NOT ESTOP MARTINEZ FROM CHALLENGING THE WARRANT BECAUSE HE DID NOT HAVE A FULL AND FAIR OPPORTUNITY TO CHALLENGE IT IN THE CIRCUIT COURT**

A finding in a prior criminal proceeding may estop an individual from relitigating the same issue in a subsequent civil action. *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 568-69 (1951).  Under Michigan law, collateral estoppel applies when 1) there is identity of parties across the proceedings, 2) there was a valid, final judgment in the first proceeding, 3) the same issue was actually litigated and necessarily determined in the first proceeding, and 4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.  *Estes v. Titus*, 481 Mich. 573, 585 (2008).

Defendants argue that there has already been a judicial determination that there was a legal basis for the search, so Plaintiffs are estopped from challenging the arrest in this case, citing *Coogan v. City of Wixom*, 820 F.2d 170, 175 (6ᵗʰ Cir. 1987), overruled on other grounds *by Frantz v. Village of Bradford*, 245 F.3d 869, 874 (6ᵗʰ Cir. 2001).  In *Coogan*, a real estate developer was charged with a felony by the City. *Id*. at 170. The Wixom police department investigated two fires that occurred at the

offices of the real estate developer, and delivered the file to the county prosecutor's office. *Id*. at 171-172. A preliminary hearing was conducted before a state district judge who found probable cause to believe that a felony had been committed, and that the real estate developer had committed it. *Id*. at 172. Later, the prosecution of the real estate developer was dismissed by the circuit court for failure to meet speedy trial requirements. *Id*. The real estate developer then brought an action against the city for malicious prosecution, infliction of emotional distress, and violation of his constitutional rights under 42 U.S.C. § 1983. The Sixth Circuit held that the real estate developer was collaterally estopped from raising the issue of probable cause in his 42 U.S.C. § 1983 claim for malicious prosecution where the developer had unsuccessfully contested the issue of probable cause at the preliminary hearing, which was an adversary proceeding under Michigan law, and again in state circuit court, after the examining judge had bound him over. *Id*. at 170.

*Darrah v. City of Oak Park*, 255 F.3d 301 (6th Cir. 2001) and *Hinchman v. Moore*, 312 F.3d 198 (6th Cir. 2003), are more analogous to this case. In *Darrah*, a protestor was arrested after participating in a demonstration in support of Detroit's unionized newspaper workers. *Darrah*, 255 F.3d at 303. The protestor was charged with obstructing a police officer, and a preliminary hearing was held in which the state district court determined that there was probable cause to hold the protestor over for trial. *Id*. at 304-305. The court noted at the preliminary hearing that regardless of the protestor and the police officer's differing accounts of the events, the mere act of

pulling an officer while he was lawfully performing his duty was enough to "constitute

. . . resisting and obstruction." *Id*. at 305. The protestor was acquitted by a jury of the

obstruction charges and filed a claim against the police officer, the City of Troy, and

the City of Oak Park for excessive force and malicious prosecution based upon the

protestor's claim that the state court's probable cause finding was founded upon the

police officer's materially false statements. *Id*.

In *Hinchman*, a driver was pulled over and arrested by a Michigan state trooper

after the trooper received a radio dispatch that the driver had assaulted a Livingston

County Sheriff's Department officer. *Hinchman*, 312 F.3d at 200. The driver was

bound over for trial following a preliminary hearing before a state court judge who

found probable cause for the driver's arrest on a charge for felonious assault. *Id*. The

driver was acquitted following a jury trial, and filed suit against two Livingston County

Sheriff's Department detectives alleging violations of her Fourth and Fourteenth

Amendment rights, as well as state law claims of false arrest, false imprisonment, and

malicious prosecution. *Id*. at 200-201. In her suit, ***the driver contended that the***

***detectives had fabricated the facts to establish probable cause***. *Id*. at 200.

In both *Darrah* and *Hinchman*, the defendants filed motions for summary

judgment. The defendants raised collateral estoppel as an argument in those cases. As

the Supreme Court has held, this Court must apply the state law of collateral estoppel

when deciding whether the state court's determination of probable cause at the

preliminary hearing has preclusive effect in [a] § 1983 action. *Darrah*, 255 F.3d at

12

311; *Hinchman*, 312 F.3d at 202.

The Sixth Circuit held in *Darrah* and *Hinchman*, that the state court's determination of probable cause at the preliminary hearing was not identical to the issue argued in the subsequent § 1983 claims, that being whether the police officers made materially false statements to the state judge that formed the basis of that court's probable cause determination. *Darrah*, 255 F.3d at 311; *Hinchman*, 312 F.3d at 202. Therefore, collateral estoppel did not apply in those cases.

There appears to be some confusion as to whether or not a state court's probable cause determination at a preliminary hearing collaterally estops a claimant from relitigating the issue in a subsequent § 1983 action. The law of our Circuit provides that where "the state affords an opportunity to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action." *Smith v. Thornburg*, 136 F.3d 1070, 1077 (6th Cir. 1998) (citing *Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987)). In *Smith*, an automobile owner was arrested when he came out to his automobile and assaulted a person, who he later found out was an officer in the Knoxville Police Department, because he thought that the person was attempting to take his automobile. *Smith*, 136 F.3d at 1073-1074. The police officer struck the automobile owner, and several other officers joined in the altercation. *Id*. at 1073. The automobile owner was charged with assaulting a police officer, and at a preliminary hearing, the charge was bound over to the Knox County

13

Grand Jury, which did not return an indictment and the charge was dismissed. *Id*. at 1073-1074. The automobile owner filed suit in state court against the police officers under 42 U.S.C. § 1983, 1985 alleging constitutional violations and seeking to recover for personal injuries and property damages resulting from his arrest, the search of his vehicle, and his subsequent prosecution. *Id*. at 1074. The Sixth Circuit held that the automobile owner was barred from relitigating in a 42 U.S.C. § 1983 claim that police officers lacked probable cause to arrest him, where the state court held a preliminary hearing on assault charges in which plaintiff's counsel examined several witnesses, plaintiff's counsel moved to dismiss the assault charge, and the court ruled that probable cause existed to bind over the assault charge to the grand jury. *Id*. at 1070-1071.

*Darrah* and *Hinchman* are more analogous to this case than *Coogan* and *Smith*. The 42 U.S.C. § 1983 claims that were alleged in *Coogan* and *Smith* appear to have no assertion by the plaintiffs that probable cause was found based upon false statements by the defendants. See *Coogan*, 820 F.3d at 175; *Smith*, 136 F.3d at 1075. In addition, in *Coogan*, the Sixth Circuit stated, "[w]e do not hold that every determination in a preliminary hearing should be given preclusive effect in a subsequent § 1983 action. Some preliminary hearings are little more than mere formalities." *Coogan*, 820 F.2d at 175.

In contrast, in *Darrah* and *Hinchman*, both plaintiffs asserted that the police officers gave false statements at the preliminary hearings in order to establish probable

14

cause. See *Darrah*, 255 F.3d at 311; *Hinchman*, 312 F.3d at 202; *see also*, Exhibit 5 *Hanner* v. *Mich. St. Police Motor Carrier Officer Brett*, E.D. Mich. Case No. 03-74675 (Nov. 16, 2005).

In this case, Plaintiffs allege that Defendants gave false information to the magistrate to establish probable cause. *Supra* at 6-10. That is sufficient to raise a genuine issue of material fact and to defeat qualified immunity. Exhibit 5, *Hanner*, E.D. Mich. Case No. 03-74675 at * 13-14. Under these circumstances, the Court should not hold that Martinez is estopped from challenging probable cause in this case because, *inter alia*, Plaintiff has not had a full and fair opportunity to challenge probable cause.

### A.   The Court Should Reject Defendants' Estopple Argument Because There Was Not An Identity of Parties Across The Proceedings

Defendants' estopple defense fails the first requirement of "identity of parties across all proceedings." In the criminal proceedings, the State of Michigan was a party, which is not in this case. Moreover, in this case, Plaintiffs sued the Defendant police officers in their individual capacities. (ECF No. 12, Page ID.122.) The Defendant police officers were not parties in the criminal proceedings. (ECF No. 29-16, Page ID.513.) Under these circumstances, estopple should not preclude Martinez from probable cause in this case because there is not an identity of parties across all proceedings. *Barrera v. City of Mt. Pleasant*, 476 F. Supp. 3d 604, 612 (E.D. Mich. 2020) (holding in a § 1983 case, "there is no identity of parties across the proceedings.

The parties in the criminal action were the State of Michigan and Plaintiff. Neither Isabella County nor the City were parties in the criminal trial.")

### B.   Defendants Waived Their Estopple Defense When They Failed To Raise It As An Affirmative Defense

"Estopple" is one of the affirmative defenses that Rule 8 requires a party to affirmatively state.  Fed. R. Civ. P. 8(c)(1).  Defendants Affirmative Defenses did not assert estopple among their Affirmative Defenses.  (ECF No. 13, PageID.162-165.) Accordingly, Defendants waived their estopple defense.  *Gilbert v. Ferry*, 413 F.3d 578, 580 (6th Cir. 2005) ("If the prevailing party in a previous action fails to raise collateral estoppel as a defense to a subsequent action, and if the parties in fact re-litigate the issue, then the party who failed to raise collateral estoppel should be deemed to have waived it since the purpose served by collateral estoppel (to prevent the relitigation of issues) has been fatally compromised.")

Defendants Affirmative Defense No. 9 does assert that another action has been initiated between the same parties involving the same claim. (*Id.* at Page ID.164.) However, as demonstrated above, that is not the case.  *Gilbert*, 413 F.3d at 580. Moreover, it goes without saying that estopple involves more than just a mere prior action initiated between the same parties involving the same claim.  In any event, Plaintiffs were unfairly prejudiced because Defendants first raised estopple after the close of discovery, which prevented Plaintiffs from responding to the defense in a meaningful way.  The inherent unfairness of Defendants' estopple argument is further

demonstrated in the next argument below.

### C.   Defendants Estopple Argument Is An Implied Waiver Of Law Enforcement Privilege

Defendants ask the Court to dismiss Plaintiff's challenge of the warrant by arguing that there is no genuine issue of material fact that the warrants were valid and supported by probable cause.   Defendants do so under circumstances where they have claimed "law enforcement investigatory privilege" to the jail house call records and all questions about them.[1]   *Supra* at 6-10.   Under such circumstances, Defendants' argument effects an implied waiver to the privilege.

"[P]rivilege cannot at once be used as a shield and a sword." *United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir. 1991). But, while the sword stays sheathed, the privilege stands. *In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005).   Defendants' Motion asks the Court to dismiss Plaintiff's challenge to the warrant and by doing so places squarely at issue the contents of the jail house phone calls over which Defendants asserted the law enforcement privilege.   "Underlying any determination that a privilege should be forfeited is the notion of unfairness. This notion implicates only 'the type of unfairness to the adversary that results in litigation circumstances when a party uses

---

[1] Federal courts apply the federal law of privilege to all federal law claims. *Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000); *Urseth v. City of Dayton*, 110 F.R.D. 245, 253 (S.D. Ohio 1986). The Sixth Circuit has not ruled on the existence of the law enforcement privilege. See, e.g., *Dean v. F.D.I.C.*, 389 F.Supp.2d 780, 791-792 (E.D. Ky. 2005) (not recognizing privilege in that case); but see, e.g., *Ohio Bureau of Workers' Comp. v. MDL Active Duration Fund, Ltd.*, No. 2:05CV0673, 2006 WL 3311514, at *3 (S.D. Ohio Nov. 13, 2006) (common law privilege recognized in both state and federal courts). Several other circuits have recognized the privilege. See, e.g., *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997); *In re Department of Investigation of the City of New York*, 856 F.2d 481, 483-484 (2d Cir. 1988).  *Goodwin v. City of Cleveland*, No. 1:15CV0027, at *3 (N.D. Ohio Apr. 20, 2016).

an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion.'" *In re the Cnty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008). In other words, it is simply not fair to allow a party to wield a privilege as a sword to cut out the heart of an opposing party's case while simultaneously brandishing it as a shield from disclosure of any Achilles heels. See Exhibit 6, *Kallas v. Carnival Corp.*, 2008 WL 2222152, *5 n. 1 (S.D. Fla. May 27, 2008). The Seventh Circuit in *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1126 (7th Cir. 1997) held that "***If the government engaged in conduct that would give it an unearned advantage over an opponent were it allowed to keep the tapes secret from him, this conduct would "waive" (in the sense of forfeit) the privilege***."

Here, the Defendants have engaged in conduct that would give it an unearned advantage over Martinez where it allowed to keep the tapes secret from Martinez. Such conduct is a waiver of the "law enforcement investigatory privilege" that Defendants have asserted on all questions about the jail calls and requests to review the tapes of such calls. Indeed, Defendants attempt to cut the heart out of Plaintiffs' challenge to the warrant by asking the Court to dismiss those claims because there is no evidence to support them, under circumstances where Defendants have asserted the privilege on all questions related to the factual basis for the warrant and the jail house calls themselves.

"Estoppel is an equitable doctrine invoked to avoid injustice in particular cases."

*Heckler v. Community Health Servs.*, 467 U.S. 51, 59 (1984); *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007).   It should not be invoked to effect injustice in which Plaintiffs never have the opportunity to challenge the warrant that brought destruction and significant disruption to their lives.   Accordingly, the Court should deny the Motion to avoid injustice in this case because of the fundamental unfairness under these circumstances, find an implied waiver and order answers to questions about the jail house call records and production of the recordings themselves.

### D.   Plaintiff Has Raised A Genuine Issue of Material Fact About Whether Ways Violated Plaintiffs' Constitutional Rights In Obtaining The Warrant

A defendant is not entitled to qualified immunity where a "reasonably well-trained officer [in the defendant's position] would have known that the search [or seizure] was illegal despite the magistrate's authorization" or that "his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley v. Briggs*, 475 U.S. 335, 345 (1986); *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) (a warrant application lacking sufficient indicia of probable cause such that it is unreasonable to believe that probable cause was established violates a person's right to be free from false arrest).   The deliberate or reckless submission of false statements or omission of facts that are material to a probable cause determination is unconstitutional.   *Wesley v. Campbell*, 779 F.3d 421, 428-29 (6th Cir. 2015).   The question is "whether a reasonably well-trained officer in [Robinson's] position would have known that his affidavit failed to establish probable cause and that he should not

19

have applied for the warrant." *Malley*, 475 U.S. at 345; *Hale v. Kart*, 396 F.3d 721, 725 (6th Cir. 2005) ("Because . . . the affidavit provided the sole basis for the warrant, we must evaluate the sufficiency of the affidavit"). If disputed factual issues underlying probable cause exist, those issues must be submitted to a jury for the jury to determine the appropriate facts. With qualified immunity, a court can submit to the jury the factual dispute with an appropriate instruction to find probable cause and qualified immunity if the factual inquiry is answered one way and to find probable cause and qualified immunity lacking if the inquiry is answered in another way. *Hale*, 396 F.3d at 728.

Here, Martinez's testimony, *supra* at 6-10, taken in a light most favorable to Plaintiffs, is sufficient to raise a genuine issue of material fact that precludes summary judgment.

## II.   THE COURT SHOULD DENY DEFENDANTS' MOTION BECAUSE THERE IS AT LEAST A GENUINE ISSUE OF MATERIAL FACT ABOUT WHETHER DEFENDANTS USED EXCESSIVE FORCE AGAINST MARTINEZ

Defendant's Motion asks the Court to dismiss all claims against Defendants. (Def. Br. at 20, ECF. No 39, PageID.306.) Defendants did not argue why the excessive force claims should be dismissed. Martinez testified that Defendant Mott used excessive force when he struck Martinez in the chest while Martinez was handcuffed and not resisting. *Supra* at 3-4. The use of excessive force by law enforcement officials in making an arrest may give rise to a claim under 42 U.S.C. § 1983 for a

violation of the Fourth Amendment. *See Bass v. Robinson*, 167 F.3d 1041, 1045 (6th Cir. 1999). "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). "[I]f the plaintiff was a free person at the time of the incident and the use of force occurred in the course of an arrest or other seizure of the plaintiff, the plaintiff's claim is governed by the Fourth Amendment's reasonableness standard." *Aldini v. Johnson*, 609 F.3d 858, 865 (6th Cir. 2010); *Gaddis ex rel. Gaddis v. Redford Township*, 364 F.3d 763, 772 (6th Cir. 2004) ("[t]he sole constitutional standard for evaluating excessive force claims is the Fourth Amendment's criterion of reasonableness").

Whether an officer has used excessive force in effecting an arrest depends on whether the officer's conduct is "objectively reasonable" in light of the facts and circumstances surrounding the arrest. *See Graham*, 490 U.S. at 396-97. "Courts must apply an objective standard, looking to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect pose[d] an immediate threat to the safety of the officers or others, and [3] whether he was actively resisting arrest or attempting to evade arrest by flight." *Gaddis*, 364 F.3d at 772 (citing *Graham*). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments." *Graham*, 490 U.S. at 396-97. Whether a particular use of force was

21

reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396. The extent of the injury is not a crucial factor in determining an excessive force claim under the Fourth Amendment. *See Bass*, 167 F.3d at 1046 n.1 ("[a] factor that is not crucial to an analysis of a claim for excessive force in violation of the Fourth Amendment is the extent of the injury inflicted").

### A.   Striking Martinez While He Was Restrained And Not Resisting Was A Fourth Amendment Violation And That Right Was Clearly Established

There is no qualified immunity for striking a restrained and not resisting arrestee, which Martinez alleges here.  Under this circuit's existing case law, there undoubtedly is a clearly established legal norm precluding the use of violent physical force against a criminal suspect who already has been subdued and does not present a danger to himself or others. *Grawey v. Drury*, 567 F.3d 302 (6th Cir. 2009) ("The general consensus among our cases is that officers cannot use force . . . on a detainee who has been subdued" and "is not resisting arrest."); *Bultema v. Benzie County*, 146 Fed.Appx. 28, 37 (6th Cir. 2005) (unpublished) ("when a suspect has already been restrained, the officer's constitutional authority to use force is significantly more circumscribed"). "[T]he gratuitous use of force on a suspect who has already been subdued and placed in handcuffs is unconstitutional." *Id.* at *35; *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004); *Phelps v. Coy*, 286 F.3d 295, 302 (2002); *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994); *McDowell v. Rodgers,* 863

F.2d 1302, 1307 (6th Cir. 1988); *Lewis v. Downs*, 774 F.2d 711, 714 (6th Cir. 1985);

*Harris v. City of Circleville*, 583 F.3d 356, 367 (6th Cir. 2009).

Here, Defendant Mott struck Martinez violently in the chest while he was in handcuffs and not resisting. At the time, police were executing a search warrant for evidence of a crime that Martinez was not charged with nor was he a suspect. The .380 that Defendants found was not the weapon that they were looking for and was not on Martinez. (Trial Tr. at 45-46, ECF No. 39-16; Page ID 557-558. Martinez was charged with felon in possession of a firearm. Martinez was not a threat because he was handcuffed and not resisting. Thus, Martinez has set forth sufficient admissible evidence to raise at least a genuine issue of material fact regarding the reasonableness of Defendants' use of force because each of the three *Graham* factors weigh in favor of that conclusion. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Indeed, Defendants do not request summary judgment of excessive force claims in their Brief. In such a posture, the jury and not this Court must decide the issues in regard to qualified immunity.

It almost goes almost without saying that a suspect's right to be free from the use of excessive force is clearly established. *Graham*, 490 U.S. at 399 (recognizing that the use of excessive force violates a suspect's Fourth Amendment rights); *Floyd v. City of Detroit*, 518 F.3d 398, 409 (6th Cir. 2008); *Adams*, 31 F.3d at 387 (unconstitutionality of use of gratuitous force against helpless and incapacitated suspect during arrest well established in 1991).

III.   **GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT ON PLAINTIFFS' STATE LAW CLAIMS**

Defendants arguments on Plaintiffs' state law claims assume the conclusion that the warrant was valid and not obtained with knowingly false information in the warrant.  However, Martinez testified that Ways obtained the warrant with knowingly false information.  *Supra* at 6-10.  Thus, accepting Martinez's version of the facts and drawing all inferences in his favor, Defendants seizures were not lawful. Under such circumstances, reasonable minds could conclude that the exercise of dominion and control over Plaintiffs $2,000, Barry's handgun and novelty badge, legally owned marijuana, was a distinct act of dominion or control that was inconsistent with Plaintiffs' rights.  *Aroma Wines & Equip., Inc. v. Columbian Dist. Servs., Inc.,* 303 Mich. App. 441, 447 (2013).  Ways testified that Barry's licensed .380 handgun was not connected in any way to the Moran murder, nor was the seized DVR, nor was the marijuana legally possessed by Plaintiffs, nor was the $2,000 taken from them. (Exhibit 2, Ways Tr. at 15-17, 37-40.)  Nor were the DVR, the legally possessed marijuana or the $2,000 or Barry's licensed .380 handgun contraband.  With the exception of the DVR, which Defendants' returned on December 8, 2021, none of Plaintiffs' other property was returned to them.  Taking the facts in the light most favorable to Plaintiffs, Defendants acts were not reasonably believed to be within the scope of authority or taken in good faith.  *Odom v. Wayne County,* 482 Mich. 459 (2008).  Therefore, Defendants were not entitled to immunity.

Meanwhile, because there is at least a genuine issue of material fact concerning excessive force, there are genuine issues of material fact about intentional infliction of emotional distress. *Gradisher v. City of Akron*, 794 F.3d 574, 587 (6th Cir. 2015) ("Because there is a genuine dispute of material fact about whether Craft used excessive force . . . we reverse the district court's grant of summary judgment in Craft's favor on the state law claims for . . . intentional infliction of emotional distress"). Summary judgment on Martinez's state-law claims is therefore inappropriate. *Floyd v. City of Detroit*, 518 F.3d 398, 410 (6th Cir. 2008)

## CONCLUSION

Plaintiffs respectfully request that this Court deny the Motion.

Respectfully submitted,

Olson PLLC

/s/ Christopher S. Olson_____
Christopher S. Olson (P58780)
32121 Woodward Avenue
Suite 300
Royal Oak, Michigan 48073
(248) 672-7368
colson@olsonpllc.mygbiz.com
*Attorneys for Plaintiffs*

December 21, 2021
Detroit, Michigan

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

~~DEANNA RASNICK~~,
DEVONNA BARRY, and
AMADO MARTINEZ

Case No.: 2:20-cv-12069
Hon. Linda V. Parker

Plaintiffs,

-vs-

WILLIAM MORRISON, et
al

Defendants.

_____/

**CERTIFICATE OF SERVICE**

I, Christopher S. Olson, hereby certify that on **December 21, 2021,** I served Plaintiffs' Motion to Compel, Brief in Support and Certificate of Service on the attorney(s) of record of all parties to the above cause via the court's CM/ECF Filing System. The statement above is true to the best of my knowledge, information and belief.

/s/ *Christopher S. Olson*
Christopher S. Olson